# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

HENRY COLDRIDGE MILLS,

      Petitioner,

v.                                                    Case No. 3:19-cv-872-TJC-LLL

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

      Respondents.

_____

## ORDER

### I.    Status

Petitioner, an inmate of the Florida penal system, is proceeding on a pro se Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2254 (Doc. 1). He challenges a state court (Duval County, Florida) judgment of conviction for three counts of attempted second-degree murder, possession of a firearm by a convicted felon, and discharging a firearm from a vehicle. He is serving a twenty-year prison sentence. Respondents filed a Response (Doc. 5) with exhibits (Docs. 5-1 to 5-18; "Resp. Ex.").[1] Petitioner filed an Amended Reply (Doc. 11).

---

[1] The Court cites to the page numbers as assigned by the Court's electronic case filing system.

After reviewing the parties' filings, the Court appointed the Federal Public Defender to represent Petitioner in order to file a supplemental brief addressing Ground Four of the Petition, as well as any other ground counsel deemed worthy of further discussion. See Order (Doc. 18). Petitioner, through counsel, filed a Supplemental Brief (Doc. 26) addressing Ground Four, as did Respondents (Doc. 27). This case is ripe for review.[2]

## II.   Governing Legal Principles

### A. Standard Under AEDPA

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal habeas corpus petition. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011)).

---

[2] "In a habeas corpus proceeding, the burden is on the petitioner to establish the need for an evidentiary hearing." Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318 (11th Cir. 2016) (citing Chavez v. Sec'y Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011)). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007) (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Id. The Court finds that "further factual development" is not necessary. Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003). Thus, an evidentiary hearing will not be conducted.

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the petitioner's claims on the merits. <u>See Marshall v. Sec'y Fla. Dep't of Corr.</u>, 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue an opinion explaining its rationale for the state court's decision to qualify as an adjudication on the merits. <u>See</u> <u>Harrington v. Richter</u>, 562 U.S. 86, 100 (2011). When the state court's adjudication on the merits is unaccompanied by an explanation,

> the federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning. But the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed.

<u>Wilson v. Sellers</u>, 138 S. Ct. 1188, 1192 (2018).

When a state court has adjudicated a petitioner's claims on the merits, a federal court cannot grant habeas relief unless the state court's adjudication of the claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(1),

(2). A state court's factual findings are "presumed to be correct" unless rebutted "by clear and convincing evidence." <u>Id.</u> § 2254(e)(1).

> AEDPA "imposes a highly deferential standard for evaluating state court rulings" and "demands that state-court decisions be given the benefit of the doubt." <u>Renico v. Lett</u>, 559 U.S. 766, 773 (2010) (internal quotation marks omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." <u>Harrington v. Richter</u>, 562 U.S. 86, 101 (2011) (internal quotation marks omitted). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." <u>Id.</u> [at 102] (citing <u>Lockyer v. Andrade</u>, 538 U.S. 63, 75 (2003)). The Supreme Court has repeatedly instructed lower federal courts that an unreasonable application of law requires more than mere error or even clear error. <u>See, e.g.</u>, <u>Mitchell v. Esparza</u>, 540 U.S. 12, 18 (2003); <u>Lockyer</u>, 538 U.S. at 75 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); <u>Williams v. Taylor</u>, 529 U.S. 362, 410 (2000) ("[A]n <u>unreasonable</u> application of federal law is different from an <u>incorrect</u> application of federal law.").

<u>Bishop v. Warden, GDCP</u>, 726 F.3d 1243, 1253-54 (11th Cir. 2013) (internal citations modified).

## B. Exhaustion and Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. <u>See</u> 28 U.S.C.

4

§ 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. Castille v. Peoples, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); see also Pope v. Rich, 358 F.3d 852, 854 (11th Cir. 2004) (noting "that Boerckel applies to the state collateral review process as well as the direct appeal process.").

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." Duncan v. Henry, 513 U.S. 364, 365 (1995) (per curiam) (quoting Picard v. Connor, 404 U.S. 270, 275 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. Duncan, 513 U.S. at 365-66; O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

Baldwin v. Reese, 541 U.S. 27, 29 (2004) (internal citations modified).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas

review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. See, e.g., Coleman, 501 U.S. at 747-48; Wainwright v. Sykes, 433 U.S. 72, 84-85 (1977). A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. See, e.g., Walker v. Martin, 131 S. Ct. 1120, 1127-28 (2011); Beard v. Kindler, 130 S. Ct. 612, 617-18 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. See Coleman, 501 U.S. at 750.

Martinez v. Ryan, 566 U.S. 1, 9-10 (2012) (internal citations modified). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of

justice. <u>Ward v. Hall</u>, 592 F.3d 1144, 1157 (11th Cir. 2010). For a petitioner to establish cause and prejudice,

> the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." <u>McCoy v. Newsome</u>, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986). Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." <u>Id.</u> at 1261 (quoting <u>Carrier</u>, 477 U.S. at 494).

<u>Wright v. Hopper</u>, 169 F.3d 695, 706 (11th Cir. 1999) (internal citations modified).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." <u>Carrier</u>, 477 U.S. at 496. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th Cir. 2001).

Ward, 592 F.3d at 1157 (internal citations modified). "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. Schlup, 513 U.S. at 324.

## C. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003), and Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish ineffective assistance, a person must show that: (1) counsel's performance was outside the wide range of reasonable, professional assistance; and (2) counsel's deficient performance prejudiced the challenger in that there is a reasonable probability that the

outcome of the proceeding would have been different absent counsel's deficient performance. <u>Strickland</u>, 466 U.S. at 687.

There is no "iron-clad rule requiring a court to tackle one prong of the <u>Strickland</u> test before the other." <u>Ward v. Hall</u>, 592 F.3d 1144, 1163 (11th Cir. 2010). Since both prongs of the two-part <u>Strickland</u> test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." <u>Id.</u> (citing <u>Holladay v. Haley</u>, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in <u>Strickland</u>: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." 466 U.S. at 697.[3]

Further, "[t]he question is not whether a federal court believes the state court's determination under the <u>Strickland</u> standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009) (quotation marks omitted). If

---

[3] This two-part <u>Strickland</u> standard also governs a claim of ineffective assistance of appellate counsel. <u>Overstreet v. Warden</u>, 811 F.3d 1283, 1287 (11th Cir. 2016). "Appellate counsel has no duty to raise every non-frivolous issue and may reasonably weed out weaker (albeit meritorious) arguments. Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." <u>Id.</u> (internal quotations and citations omitted). To satisfy the prejudice prong, a petitioner must show a reasonable probability that "but for the deficient performance, the outcome of the appeal would have been different." <u>Black v. United States</u>, 373 F.3d 1140, 1142 (11th Cir. 2004); <u>see also</u> <u>Philmore v. McNeil</u>, 575 F.3d 1251, 1264-65 (11th Cir. 2009) (prejudice results only if "the neglected claim would have a reasonable probability of success on appeal").

there is "any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard," then a federal court may not disturb a state-court decision denying the claim. <u>Richter</u>, 562 U.S. at 105. As such, "[s]urmounting <u>Strickland</u>'s high bar is never an easy task." <u>Padilla v. Kentucky</u>, 559 U.S. 356, 371 (2010). "Reviewing courts apply a 'strong presumption' that counsel's representation was 'within the wide range of reasonable professional assistance.'" <u>Daniel v. Comm'r, Ala. Dep't of Corr.</u>, 822 F.3d 1248, 1262 (11th Cir. 2016) (quoting <u>Strickland</u>, 466 U.S. at 689). "When this presumption is combined with § 2254(d), the result is double deference to the state court ruling on counsel's performance." <u>Id.</u> (citing <u>Richter</u>, 562 U.S. at 105); <u>see also</u> <u>Evans v. Sec'y, Dep't of Corr.</u>, 703 F.3d 1316, 1333-35 (11th Cir. 2013) (en banc) (Jordan, J., concurring); <u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11th Cir. 2004).

## III.   <u>Analysis</u>

### A. Ground One

Petitioner argues that his trial counsel was ineffective for failing to object "to inadmissible hearsay testimony from Ms. Homernett[er] Hicks used to identify the Petitioner as the shooter." Doc. 1 at 16 (capitalization omitted). Petitioner raised this claim in his postconviction motion filed pursuant to Florida Rule of Criminal Procedure 3.850. The postconviction court, after holding an evidentiary hearing, denied the claim:

Defendant contends counsel was ineffective for allowing for the admission of inadmissible hearsay testimony from one of the drive-by shooting victims, Homernetter Hicks ("Ms. Hicks"). Specifically, Defendant claims counsel should have objected to, or filed a motion <u>in</u> <u>limine</u> regarding, Ms. Hicks' by-name identification of Defendant, because she learned of Defendant's name based on hearsay statements from the other, non-testifying victim, Glen Deering ("Mr. Deering"), after the shooting occurred.[FN]

> [FN] Mr. Deering was unavailable to testify at trial due to a debilitating motorcycle accident that occurred after the shooting but before trial.

At trial, Ms. Hicks identified Defendant as the shooter by reciting his name, identifying him in court, and describing the vehicle he was driving during the incident:

> The State: Who was the person who shot at you?
>
> Ms. Hicks: Henry Mills.
>
> The State: Do you see him in the courtroom today?
>
> Ms. Hicks: Yes.
>
> The State: Can you please identify him by an article of clothing he's wearing and his position in the courtroom?
>
> Ms. Hicks: A white t-shirt.
>
> The State: Okay. And where is he seated?
>
> Ms. Hicks: On the left-hand side.

11

The State: And is he on the right, the side, or the left middle?

Ms. Hicks: In the middle.

The State: May the record reflect that she's identified the defendant?

This Court: The record will so reflect.

. . . .

The State: Okay. Can you describe the car that, um, Mr. Mills was in?

Ms. Hicks: A burgundy Trail Blazer.

. . . .

The State: At some point, after driving around the Wilson area, did you-all see Mr. Mills?

Ms. Hicks: Yes, ma'am.

. . . .

The State: When you saw him, was he in the same burgundy Trail Blazer that you had seen him [in] earlier?

Ms. Hicks: Yes, ma'am.

Counsel did not object to Ms. Hicks identifying Defendant by name, but cross-examined Ms. Hicks on how she became aware of Defendant's name:

Defense Counsel: Okay. Alright. So when Ms. Sykes asked you who shot at you, and you answered, Henry Mills; right?

Ms. Hicks: Correct.

Defense Counsel: Because somebody else gave you that name?

Ms. Hicks: No.

Defense Counsel: This man [Defendant] never gave it to you?

Ms. Hicks: [Defendant] never gave me that name.

Defense Counsel: Okay. Someone else gave you that name?

Ms. Hicks: Okay. Correct.

Based on this line of questioning during cross-examination, it is clear counsel knew or suspected that Ms. Hicks became aware of Defendant's name through someone else, presumably Mr. Deering. Because Mr. Deering was unavailable, his out-of-court statement of Defendant's name to Ms. Hicks is inadmissible hearsay. Counsel performed deficiently by not objecting to, or filing a motion in limine to exclude, Ms. Hicks' by-name identification of Defendant.

Defendant, however, was not prejudiced by virtue of counsel's failure to object or file a motion in limine. Although Ms. Hicks' by-name identification of Defendant was the product of hearsay and should have been excluded from trial, Ms. Hicks also identified Defendant as the shooter by identifying him in court and by describing the car he was driving during the shooting. Furthermore, Larry White ("Mr. White"), an eye-witness who lived on the street where the shooting occurred, identified Defendant as the perpetrator based on his description of Defendant's vehicle, an in-court description of Defendant at the time of the shooting, and an out-of-court show-up identification of Defendant

13

immediately following the shooting.[] Linda Sterling ("Ms. Sterling"), another eyewitness who lived on the street where the shooting occurred, accurately described the vehicle Defendant was driving and the driver of that vehicle as being a relatively young black male with very short hair-just like Defendant. Given the fact that these additional methods of identification are equally if not more compelling proof of identity, this Court finds there is no reasonable likelihood of Defendant being acquitted had Ms. Hicks been foreclosed from identifying Defendant by name at trial.

Later at trial, Defendant was referenced as being the shooter by his name through the testimony of Sergeant William Nelson ("Sgt. Nelson") and Lieutenant Michael Shell ("Lt. Shell"), both of whom obtained Defendant's name via the inadmissible hearsay statements of Mr. Deering. Counsel objected to both by-name identifications of Defendant; the trial judge, however, denied these hearsay objections. Therefore, counsel did not perform deficiently for failing to object to the subsequent by-name hearsay identifications of Defendant, because "counsel cannot be ineffective for what counsel actually did . . . ." Bates v. State, 3 So. 3d 1091, 1106 n.20 (Fla. 2009). Accordingly, because Defendant was not prejudiced by Ms. Hicks' by-name identification of Defendant, and because counsel did not perform deficiently with respect to subsequent witnesses' by-name identification of Defendant, this claim is denied.

Resp. Ex. 13 at 3-6 (internal record citations and footnotes omitted). Petitioner appealed, and the First District Court of Appeal per curiam affirmed the postconviction court's denial of this claim without issuing a written opinion. Resp. Ex. 17.

This Court addresses this claim in accordance with the deferential standard for federal court review of state court adjudications. Upon thorough review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented. Thus, Petitioner is not entitled to federal habeas relief on Ground One.

**B. Ground Two**

Petitioner argues that his trial counsel was ineffective for failing "to present evidence favorable to Petitioner's defense (J.S.O. CAD Report (Police dispatch) and Interrogation video)." Doc. 1 at 18 (capitalization omitted). He argues that "[t]he jury was never aware of the initial description of the shooter having dreadlocks . . . and the police dispatch and interrogation video would have allowed the jury to hear and see that [Petitioner] did not match the description of the shooter." Id.

Petitioner raised this claim in his Rule 3.850 motion. After holding an evidentiary hearing, the postconviction court denied the claim:

> Defendant avers counsel was ineffective for failing to introduce the Jacksonville Sheriff Office's dispatch recording and Defendant's interrogation video, which would have established that the physical descriptions of the shooter given by three eye-

witnesses, Mr. Deering, Mr. White, and Ms. Sterling, conflicted with one another and with Defendant's physical appearance at the time he was arrested.

The still shot photograph from Defendant's interrogation video shows Defendant had short hair and was wearing a black t-shirt at the time of his arrest. This is contrary to Mr. White's testimony regarding the shooter wearing a "wife-beater"-type tank top. This is also contrary to the police dispatch that indicated the shooter had "short twists" (i.e., dreadlocks), presumably based on information Mr. Deering initially provided police regarding the shooter's identity.

Even if counsel had introduced the still shot photograph from Defendant's interrogation and the police dispatch recording at trial, there is no reasonable probability that the outcome of the trial would have been different. At trial, the State preemptively elicited testimony from Sgt. Nelson indicating that Mr. Deering was not initially truthful with police regarding the description and identity of the shooter. During closing arguments, defense counsel highlighted Mr. Deering's initial untruthfulness with Sgt. Nelson:

> And Glen Deering lied to Sgt. Nelson. Sgt. Nelson said when he was first speaking to Glen Deering, Glen Deering gave him a story, and Sgt. Nelson said, I didn't believe his story, kept pressing him, Deering changed his story, and then he started coming up, and that's when he gives the name, and then they do the BOLO.

Counsel could have introduced the dispatch recording to show the jury the specific misinformation Mr. Deering first gave police regarding the shooter's "short twists," but this evidence would be highly unlikely to persuade the jury to acquit Defendant, especially

16

considering the jury was already aware that Mr. Deering was initially untruthful with police.

At trial, Mr. White testified the shooter was wearing a "wife-beater"-type tank top; the still shot photograph from Defendant's interrogation, however, shows Defendant was wearing a black t-shirt at the time of arrest. Counsel did not introduce the still shot photograph from Defendant's interrogation into evidence. Counsel did, however, highlight the discrepancy in Mr. White's testimony at closing: "This person [Defendant] is sitting in a car [at the time of the show-up identification], and is this person [Defendant] wearing a wife beater? No. He's wearing a black shirt." Therefore, counsel was not deficient. <u>Bates</u>, 3 So. 3d at 1106 n.20 ("[C]ounsel cannot be ineffective for what counsel actually did . . . .").

Moreover, even if counsel had introduced the still shot interrogation photograph at trial, there is no reasonable probability that Defendant would have been acquitted in light of the various other modes of identification at trial. Specifically, Ms. Hicks identified Defendant as the shooter by identifying him in court and by describing the car he was driving during the shooting. Ms. Sterling accurately described the vehicle Defendant was driving and the driver of that vehicle as being a relatively young black male with very short hair. Mr. White identified Defendant as the perpetrator based on his description of Defendant's vehicle and an out-of-court show-up identification of Defendant immediately following the shooting. Furthermore, two shell casings were found in Defendant's car when he was arrested minutes after the shooting. In light of the glut of identification evidence adduced at trial, and given the fact that counsel did, in fact, highlight the discrepancy in Mr. White's testimony, there is no reasonable likelihood the outcome of the trial would have been different if counsel had introduced the still shot photograph of Defendant's interrogation. Accordingly, because

17

> counsel did not perform deficiently, and because
> Defendant was not prejudiced, this claim is denied.

Resp. Ex. 13 at 9-11 (internal record citations omitted). Petitioner appealed, and the First DCA per curiam affirmed the state court's denial of this claim without issuing a written opinion. Resp. Ex. 17.

This Court addresses this claim in accordance with the deferential standard for federal court review of state court adjudications. Upon thorough review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented. Thus, Petitioner is not entitled to federal habeas relief on Ground Two.

## C. Ground Three

Petitioner claims that his trial counsel was ineffective for failing "to file a motion in limine to exclude identification / testimony of Glen Deering who was unavailable for trial." Doc. 1 at 20 (capitalization omitted). Petitioner raised this claim in his Rule 3.850 motion. The postconviction court summarily denied the claim:

> Defendant avers counsel was ineffective for not
> filing a motion in limine to exclude Mr. Deering's
> testimony regarding his identification of Defendant as
> the shooter.

18

> Counsel did not perform deficiently by not filing a motion in limine to exclude Mr. Deering's testimony regarding his identification of Defendant because Mr. Deering did not testify at trial. Furthermore, this Court finds the issue of Mr. Deering's out-of-court identification of Defendant and the resultant, allegedly-hearsay testimony of Ms. Hicks, Lt. Shell, and Sgt. Nelson was fully analyzed in Ground One above. Accordingly, this claim is denied for being duplicative of Ground One.

Resp. Ex. 13 at 13 (internal record citations omitted). Petitioner appealed, and the First DCA per curiam affirmed the state court's denial of this claim without issuing a written opinion. Resp. Ex. 17.

This Court addresses this claim in accordance with the deferential standard for federal court review of state court adjudications. Even assuming trial counsel was deficient in the manner Petitioner suggests, Petitioner fails to show prejudice. Indeed, he has not shown a reasonable probability exists that but for his counsel's alleged ineffectiveness, the outcome of his trial would have been different. Thus, upon thorough review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented. Thus, Petitioner is not entitled to federal habeas relief on Ground Three.

**D. Ground Four**

Petitioner contends that he was denied "due process" and the "right to confront one's accuser when" the "trial court committed reversible error by allowing (2) Jacksonville Sheriff's Officers to testify to inadmissible hear-say [sic] from unavailable declarant." Doc. 1 at 22 (capitalization omitted). Specifically, according to Petitioner, the law enforcement officers were permitted to testify "that Glen Deering[,] a non-testifying alleged victim[,] had identified [Petitioner] by name as the shooter." Id.

Respondents contend that this claim is unexhausted because when Petitioner raised it in state court, "Petitioner argued the case solely as a matter of Florida law and not as a violation of the United States Constitution." Doc. 5 at 31. In his counseled supplemental brief, Petitioner contends that "[h]e consistently raised arguments that the testimony was inadmissible because Mr. Deering was not a testifying witness," and he "raised the confrontation issue in his direct appeal" while citing to Postell v. State, 398 So. 2d 851, 854 (Fla. 3d DCA 2981), which discussed the Sixth Amendment Confrontation Clause. Doc. 26 at 19. Petitioner further states that he also "cited to other cases that do not directly cite to the Sixth Amendment, but rely on cases under the Sixth Amendment." Id. at 19 n.4. Petitioner also argues that he exhausted the federal nature of this claim because he cited to federal law when he raised a similar

argument in the context of an ineffective assistance of trial counsel claim in his Rule 3.850 motion. See id. at 19-20.

The Eleventh Circuit has found that when a petitioner has "a claim that could arise under either state or federal law," the petitioner "must clearly indicate to the state courts that he intends to bring a federal claim." Preston v. Sec'y, Fla. Dep't of Corr., 785 F.3d 449, 458 (11th Cir. 2015). To do so, "a petitioner need not use magic words or talismanic phrases to present his federal claim to the state courts." Id. at 457. However, he must "put the state court on notice that he intend[s] to raise a federal claim . . . by, for example, 'including . . . the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim [as a federal one].'" Id. (quoting Lucas v. Sec'y, Dep't of Corr., 682 F.3d 1342, 1351 (11th Cir. 2012)). "[T]his language must be applied with common sense and in light of the purpose underlying the exhaustion requirement[:] to afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary." McNair v. Campbell, 416 F.3d 1291, 1302 (11th Cir. 2005) (internal quotations and citations omitted).

In his direct appeal, Petitioner, through counsel, raised a claim entitled: "The trial court committed reversible error in overruling defendant's hearsay and legal relevancy objections (and denying his related mistrial motions) thereby allowing law enforcement officers to testify a non-testifying victim had

furnished them with evidence of [the defendant's] guilt." Resp. Ex. 6 at 32 (capitalization omitted).[4] In making this argument, Petitioner did not cite or identify any federal constitutional provisions in his initial or reply briefs (nor did the state in its answer brief). Instead, the focus of Petitioner's argument was on the trial court's evidentiary rulings. While Petitioner repeatedly stated that the admission of the hearsay testimony was improper because it violated his right to confront the witness against him, he cited only Florida case law in support of his position. Only one of those cited cases–which Petitioner included in a "see also" citation without any parenthetical explanation–addresses the United States Constitution's Sixth Amendment Confrontation Clause. See id. at 37 (citing Postell v. State, 398 So. 2d 851, 854 (Fla. 3d DCA 1981)). That single citation cannot be said to have placed the state court on notice of the federal nature of Petitioner's claim. To say that such a citation would exhaust a federal claim would require a state court to review every case that is simply cited in a brief to determine whether the cited case turned on federal law, even when the brief does not cite or otherwise identify any federal law.

This case is similar to Lucas.

> [I]n Lucas[,] . . . the petitioner failed to specify whether
> his claim arose under state or federal law in his briefing
> before the Florida Supreme Court. He averred only that

---

[4] The First DCA issued an en banc opinion affirming Petitioner's convictions and sentences without comment but issued a written opinion addressing the trial court's imposition of a cost and fine. See Resp. Ex. 9.

he had been deprived "of his constitutional right of confrontation of witnesses against him." Lucas, 682 F.3d 1342, 1352 (11th Cir. 2012) (quotation omitted). The difficulty was that both the federal and Florida Constitutions grant a right to confront witnesses. Id. The petitioner did not cite to any cases discussing the confrontation right, nor did he refer to any specific constitutional provisions. Id. at 1353. His allusion to a "constitutional right of confrontation," standing alone, did not "fairly apprise[] the state court of his federal constitutional right-to-confrontation claim." Id. at 1352-53 (emphasis added). Our conclusion was guided in substantial measure by the Supreme Court's decision in Baldwin v. Reese, where the petitioner asserted an ineffective assistance of counsel claim. 541 U.S. at 27, 30 (2004). Much like the petitioner in Lucas, the petitioner in Baldwin did not explain whether his claim arose under the federal or Oregon Constitution. Id. at 33. The Supreme Court, therefore, held that his mere reference to "ineffective assistance" did not fairly present a federal claim. Id. at 32. Together, Lucas and Baldwin stand for the proposition that a petitioner with a claim that could arise under either state or federal law must clearly indicate to the state courts that he intends to bring a federal claim.

Preston, 785 F.3d at 458 (internal citations modified). While some Eleventh

Circuit precedent exists that has a more lenient exhaustion standard in this

regard,[5] those cases were decided prior to the Supreme Court's decision in

---

[5] See Watson v. Dugger, 945 F.2d 367, 371-72 (11th Cir. 1991) ("Defendants in state courts need not couch all of their claims in constitutional terms to preserve a constitutional issue for federal habeas corpus review. Instead, they need only present the substance of a federal constitutional claim to the state courts in order to exhaust the issue and preserve it for review in a federal habeas corpus proceeding. When a federal habeas petitioner presents what amounts to a mere variation in the same claim rather than a different legal theory, he has presented the state courts with the substance of his claims and thus has properly exhausted them." (internal quotations and citations omitted)); Hutchins v. Wainwright, 715 F.2d 512, 518 (11th Cir. 1983)

Duncan v. Henry, 513 U.S. 364 (1995).[6] In Duncan, the Supreme Court found that "[i]f state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution." Duncan, 513 U.S. at 365-66. Similarity between the protections under state law and federal law is not enough. Indeed, a petitioner is required to give the state courts notice of a federal legal theory, even if the substance of the state and federal claims are identical.

Considering the record, the Court finds that Petitioner did not "fairly present" the federal nature of his claim to the state court. Lucas, 682 F.3d at 1352 ("[A] petitioner does not 'fairly present' a claim to the state court 'if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so.'" (quoting Baldwin, 541 U.S. at 32)); see also Raulerson v. Warden, 928 F.3d 987, 1005 (11th Cir. 2019) ("In the context of exhaustion, 'it is not at all clear that a petitioner can exhaust a federal

---

("Although the phrasing of the issue on direct appeal did not use the words 'confrontation clause,' the appeal clearly presented the problem of allowing and urging the jury to infer that an unnamed non-testifying witness had identified the petitioner.").

[6] The Eleventh Circuit recently recognized that Duncan "undermined to the point of abrogation [the] decision in Watson and explains [the Eleventh Circuit's] subsequent departure from the Watson decision." Pringle v. Sec'y, Fla. Dep't of Corr., No. 21-14318, 2024 WL 3936915, at *7 (11th Cir. Aug. 26, 2024).

claim by raising an analogous state claim,' even if the federal and state rights are identical in content." (quoting <u>Preston</u>, 785 F.3d at 460)). Thus, this claim is unexhausted and procedurally barred. Petitioner has shown neither cause nor prejudice resulting from the procedural bar, and he fails to demonstrate a fundamental miscarriage of justice would result if this claim were not addressed on the merits. Ground Four is due to be denied.

Even assuming the claim is exhausted and the trial court erred, there was ample evidence outside of this alleged improper testimony to support Petitioner's convictions, such that any purported Sixth Amendment Confrontation Clause error did not have a "'substantial and injurious effect or influence in determining the jury's verdict.'" <u>Granda v. United States</u>, 990 F.3d 1272, 1292 (11th Cir. 2021) (quoting <u>Davis v. Ayala</u>, 576 U.S. 257, 267-68 (2015) (describing the <u>Brecht v. Abrahamson</u>, 507 U.S. 619 (1993), standard)). Ms. Hicks described the vehicle Petitioner was driving when the shooting occurred and identified Petitioner in court; Mr. White described the shooter and the shooter's vehicle, and Mr. White identified Petitioner shortly after the shooting in a show-up identification;[7] and Ms. Sterling described Petitioner's vehicle and

---

[7] At trial, Mr. White testified that he immediately described the shooter and his vehicle to the police while still at the scene. Resp. Ex. 3 at 76. Subsequently, the police took Mr. White to a pawn shop, and as soon as they arrived, Mr. White identified the shooter in the parking lot. <u>See id.</u> at 76-78. Sergeant Nelson, the officer who conducted the show-up identification with Mr. White testified that Petitioner was standing next to a detective who was also in street clothes, and Mr. White made the identification at that time, stating, "'I'm positive that's him.'" <u>Id.</u> at 100. Additionally, prior to trial,

provided a description of the shooter. Further, when Petitioner was arrested shortly after the shooting, two shell casings were found in his vehicle. Considering the record, the Court finds Petitioner did not suffer "actual prejudice." Brecht, 507 U.S. at 637; see Al-Amin v. Warden, Ga. Dep't of Corr., 932 F.3d 1291, 1302 (11th Cir. 2019) ("On federal collateral review, however, we review an alleged Confrontation Clause error under Brecht's actual prejudice standard."). As such, Petitioner is not entitled to federal habeas relief on this ground.[8]

## E. Ground Five

According to Petitioner, the "appe[llate] court erred in affirming the trial court[']s denial of [P]etitioner's J.O.A. Motion on direct appeal, because the evidence was insufficient to sustain convictions for (3) counts of attempted

---

defense counsel filed a motion to suppress Mr. White's positive identification of Petitioner during the show-up identification. See Resp. Ex. 13 at 52-54. Thus, while Mr. White did not specifically indicate during his trial testimony that Petitioner was the same person he identified that day, it was clear based on the totality of the testimony and other record evidence that White positively identified Petitioner shortly after the crime.

[8] Insofar as Petitioner argues that the trial court erred in its evidentiary rulings, "federal courts will not generally review state trial courts' evidentiary determinations." Taylor v. Sec'y, Fla. Dep't of Corr., 760 F.3d 1284, 1295 (11th Cir. 2014). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). "Habeas relief is warranted only when the error 'so infused the trial with unfairness as to deny due process of law.'" Taylor, 760 F.3d at 1295 (quoting Lisenba v. People of State of California, 314 U.S. 219, 228 (1941)). Here, the alleged errors did not affect the fundamental fairness of Petitioner's trial.

second-degree murder." Doc. 1 at 24. He argues that "the [S]tate[']s evidence did not exclude the reasonable hypothesis that the reported shots were in the nature of warning shots that did nothing to put the occupants in imminent danger of being wounded or killed." <u>Id.</u> at 25. He further argues that "there was no evidence showing any type of ongoing hatred or enmity between [Petitioner] and any of the alleged victims," and "at most, the [S]tate[']s evidence demonstrated that [Petitioner] impulsively overreacted by discharging the gun to break off the car chase being perpetrated by Deering and Hicks." <u>Id.</u> at 26.

Petitioner raised a similar claim on direct appeal. <u>See</u> Resp. Ex. 6 at 17-25. The First DCA issued an en banc opinion affirming Petitioner's convictions and sentences without comment but issued a written opinion addressing the trial court's imposition of a cost and fine. <u>See</u> Resp. Ex. 9. Petitioner filed a counseled motion for rehearing and a request for the issuance of a written opinion on the two claims summarily affirmed and a certification, which the First DCA denied. <u>See</u> Resp. Ex. 10.

Respondents argue that this claim is unexhausted. <u>See</u> Doc. 5 at 35. In addressing this claim on direct appeal, Petitioner cited to the Due Process Clause of the Fourteenth Amendment and a United States Supreme Court case. <u>See</u> Resp. Ex. 6 at 25. The focus of his argument, however, was again founded upon state law. Nevertheless, assuming the claim is exhausted and the First DCA addressed the federal nature of the claim on the merits, the Court will

address this claim in accordance with the deferential standard for federal court review of state court adjudications. Upon thorough review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented.

Regardless, the claim has no merit. When reviewing an insufficiency of the evidence claim in a habeas petition, a federal court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). The court must assume that the jury resolved any evidentiary conflicts in favor of the prosecution, and the court must defer to that resolution. Id. Here, after a thorough review of the trial record, it is clear that the state presented sufficient evidence of the charged offenses such that a "rational trier of fact" could find "the essential elements of [each] crime beyond a reasonable doubt." Hallford v. Culliver, 459 F.3d 1193, 1205-06 (11th Cir. 2006) (quotations and citation omitted). Indeed, testimony at trial showed that shots were fired at the vehicle occupied by Deering, Hicks, and their daughter. Resp. Ex. 3 at 35-36, 73-74. Ms. Hicks testified that she feared for her life, and she was afraid, noting she had her baby in the car with her. See id. at 35. The jury was instructed that

28

to prove the crime of attempted second-degree murder, the state must prove beyond a reasonable doubt that: (1) Petitioner intentionally committed an act which would have resulted in the death of the three victims except that someone prevented Petitioner from killing them or he failed to do so; and (2) the act was imminently dangerous to another and demonstrating a depraved mind without regard for human life. Resp. Ex. 4 at 188-89. The evidence presented at trial supported the jury's finding that the state proved these two elements beyond a reasonable doubt as to Deering, Hicks, and the child. Thus, the trial court did not error in denying Petitioner's motion for a judgment of acquittal, and his sufficiency of the evidence claim is without merit. Accordingly, Ground Five is due to be denied.

### F. Ground Six

Petitioner argues that his appellate counsel was ineffective for failing "to raise on direct appeal that fundamental error occurred when Petitioner's jury was not instructed on the one step removed necessary lesser included jury instruction of attempted manslaughter by act." Doc. 1 at 27 (capitalization omitted). Petitioner raised this claim in his state court habeas petition alleging ineffective assistance of appellate counsel. Resp. Ex. 18 at 3-7. The First DCA denied the petition on the merits. See id. at 47.

Respondents recognize that "[a]t the time of trial, March 26, 2014, and during the pendency of the direct appeal the failure to give a jury instruction

29

on attempted manslaughter by act as a category one lesser included offense of attempted second-degree murder was fundamental error." Doc. 5 at 38 (citing State v. Montgomery, 39 So. 3d 252 (Fla. 2010)). However, in 2019, "the Florida Supreme Court receded from Montgomery and its progeny and held that Florida would no longer 'recognize . . . a fundamental right to instructions that facilitate partial jury nullification.'" Id. at 39 (quoting Knight v. State, 286 So. 3d 147, 151 (Fla. 2019)). Thus, Respondents assert that "if this Court were to grant relief and order a new appeal – which would be the logical remedy for a claim of ineffective [assistance of] appellate counsel – the result would be the same, as there was no fundamental error." Id. Respondents also note that because Petitioner's trial counsel "relied on aggravated assault as the only lesser included offense[,] . . . [t]he only argument available would be fundamental error." Id.

At the time of Petitioner's direct appeal, failing to instruct a jury on attempted manslaughter as a lesser included offense of attempted second-degree murder constituted fundamental error. See Walton v. State, 208 So. 3d 60 (Fla. 2016). But, in 2019, the Florida Supreme Court receded from that precedent. See Knight, 286 So. 3d at 147. "The new rule of [Florida] law . . . is that there is no fundamental error in jury instructions where 'there was no error in the jury instruction for the offense of conviction and there is no claim that

Case 3:19-cv-00872-TJC-LLL   Document 31   Filed 09/09/24   Page 31 of 34 PageID 1575

the evidence at trial was insufficient to support that conviction.'" <u>Roberts v. State</u>, 299 So. 3d 9, 12 (Fla. 4th DCA 2020) (quoting <u>Knight</u>, 286 So. 3d at 151).

Had Petitioner's appellate counsel raised this issue on direct appeal in 2014, the First DCA would have found fundamental error. Thus, appellate counsel performed deficiently by not raising that issue on direct appeal.[9] However, Petitioner cannot show prejudice.

> In making the determination whether the specified errors resulted in the required prejudice, a court should presume, absent challenge to the judgment on grounds of evidentiary insufficiency, that the judge or jury acted according to law. An assessment of the likelihood of a result more favorable to the defendant must exclude the possibility of arbitrariness, whimsy, caprice, "nullification," and the like. A defendant has no entitlement to the luck of a lawless decisionmaker, even if a lawless decision cannot be reviewed. The assessment of prejudice should proceed on the assumption that the decisionmaker is reasonably, conscientiously, and impartially applying the standards that govern the decision. It should not depend on the idiosyncra[s]ies of the particular decisionmaker, such as unusual propensities toward harshness or leniency.

---

[9] Notably, in his Rule 3.850 motion, Petitioner argued that trial counsel was ineffective "for failing to object to jury instructions that only included Aggravated Assault (a permissible, category-two lesser-included offense), and not Attempted Manslaughter by Act (a mandatory, category-one lesser-included offense)." Resp. Ex. 13 at 223. The postconviction court found that trial counsel was deficient for not requesting such an instruction, but further found that Petitioner did not suffer prejudice: "'[A]s a matter of law, the possibility of a jury pardon cannot form the basis for a finding of prejudice under <u>Strickland</u>. Therefore, a claim alleging ineffective assistance of counsel for failure to request an instruction on a lesser-included offense may be summarily denied.'" <u>Id.</u> at 224 (quoting <u>Sanders v. State</u>, 946 So. 2d 953, 960 (Fla. 2006)).

31

_Strickland_, 466 U.S. at 694-95; _see also_ _Sanders_, 946 So. 2d at 958-60 (recognizing that a failure to instruct a jury on a lesser-included offense cannot support a prejudice finding under _Strickland_).

The record reveals that the jury instructions on attempted second-degree murder were proper and there was sufficient evidence to support the attempted second-degree murder convictions. Indeed, the jury's verdict reflects their belief that the state proved beyond a reasonable doubt that Petitioner was guilty of attempted second-degree murder. This Court presumes that the jury acted in accordance with the law. _See_ _Strickland_, 466 U.S. at 694. Thus, the jury, following the trial court's instructions, would not have convicted Petitioner of attempted manslaughter, a lesser-included offense, even if the manslaughter instruction had been given. _See_ _Sanders_, 946 So. 2d at 958 (recognizing that in Florida, a jury may convict a defendant of a lesser-included offense "only if it decides that the main accusation has not been proved beyond a reasonable doubt").

Therefore, considering the record, the Court finds that the state court's decision denying Petitioner's petition alleging ineffective assistance of appellate counsel was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented. Petitioner is not entitled to federal habeas relief on Ground Six.

Accordingly, it is

**ORDERED**:

1.     Petitioner's Motion to Proceed Pro Se and Get Ruling on Motion to Hear and Rule (Doc. 30) is **GRANTED to the extent** that the Federal Public Defender is relieved of any further responsibility in this case, and Petitioner is now proceeding pro se. The Court appreciates the services of appointed counsel.

2.     The Petition (Doc. 1) is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**.

3.     The **Clerk of Court** shall enter judgment dismissing this case with prejudice, terminate any pending motions, and close the file.

4. If Petitioner appeals, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.[10]

**DONE AND ORDERED** at Jacksonville, Florida, this 9th day of September, 2024.



TIMOTHY J. CORRIGAN
United States District Judge

JAX-3 9/6
c:
Henry Coldridge Mills, #D10394
Counsel of Record

---

[10] The Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Here, after consideration of the record as a whole, the Court will deny a certificate of appealability.